**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **CRIM. NO. 3:20-cr-00071 (VAB)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **GOVERNMENT'S MOTION FOR** |
| | : | **PRETRIALCONFERENCE PURSUANT** |
| **AHMAD KHALIL ELSHAZLY,** | : | **TO 18 U.S.C. APP. III (CIPA) SECTION 2** |
| | : | |
| **Defendant.** | : | |
| | : | |

The United States, through the undersigned counsel, hereby moves the Court to hold a pretrial conference, pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"). 18 U.S.C. App. III § 2. On June 29, 2020, the Court scheduled trial to begin on September 8, 2020. The government respectfully submits that any trial date should account not only for the potential need for the CIPA in this case, but also for the ongoing COVID-19 pandemic. Accordingly, because the United States anticipates that issues of discovery, disclosure, or use of classified information may arise during this case, the United States respectfully requests that the Court convene a pretrial conference to consider the possibility and impact of classified information on this case, specifically including on the trial schedule, as required by Section 2 of the CIPA.

As in all cases that may implicate classified information, the government provides the Court with a detailed description of the CIPA's procedures, which allow the Court and the parties to protect classified information relating to this case.

## OVERVIEW OF CIPA

The CIPA contains a set of procedures by which federal district courts rule on pretrial and trial matters concerning the discovery, admissibility, and use of classified information in criminal cases. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994). The CIPA's

1

fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996).  The CIPA "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial." *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006).

The Supreme Court acknowledged the importance of protecting the nation's secrets from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service."  *CIA v. Sims*, 471 U.S. 159, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam)); *accord Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world.").  Federal courts have long recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant."  *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir. 1973).

The CIPA neither creates any new right of discovery nor expands the rules governing the admissibility of evidence.  *See United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); *accord United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc).  Rather, the CIPA applies preexisting discovery law in criminal cases to classified information and restricts discovery of classified information to protect the government's national-

security interests.  *See Baptista-Rodriguez*, 17 F.3d at 1363-64; *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998).

The government produces discoverable information to the defense in cases involving classified information.  But the discovery of classified information must be actually "helpful to the defense of the accused."  *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989) (stating "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege, but that the threshold for discovery in this context further requires that a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused,'").  "While CIPA creates no new rule of evidence regarding admissibility, the procedures it mandates protect a government privilege in classified information similar to the informant's privilege . . . ."  *Id.* at 623[1]; *see also United States v. Amawi*, 695 F.3d 457, 475 (6th Cir. 2012) (quoting *Yunis* and finding the classified information at issue not "relevant and helpful to the defense."); *United States v. Hanna,* 661 F.3d

---

[1] The D.C. Circuit recognized that the government's privilege concerns not merely the content of any particular conversation, but the privilege often involves the government's ability to collect the information:

> [T]he government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all.  Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods.  Implicit in the whole concept of an informant-type privilege is the necessity that information-gathering agencies protect from compromise "intelligence sources and methods."  The Supreme Court has expressly recognized the legitimacy of this concern in construing the National Security Act of 1947, 61 Stat. 498, 50 U.S.C. § 403(d)(3), in *CIA v. Sims,* 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985).

*Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989).  Thus, courts understand the need to protect the sources and methods of collecting information as well as the information itself.

271, 295 (6th Cir. 2011) (affirming the trial court's *ex parte* and *in camera* decision that classified information was not actually helpful to the defense).

The CIPA does not "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *accord United States v. McVeigh*, 923 F. Supp. 1310, 1314 (D. Colo. 1996) ("CIPA does not enlarge the scope of discovery or of *Brady*."). Nor does the CIPA provide that the admissibility of classified information be governed by anything other than the well-established standards set forth in the Federal Rules of Evidence. *See Baptista-Rodriguez*, 17 F.3d at 1364.

A.     Section 1—Definitions

For the purpose of the CIPA, "classified information" includes any information or material determined by the United States Government to require protection against unauthorized disclosure for reasons of national security. 18 U.S.C. App. III § 1(a). "National security" means the national defense and foreign relations of the United States. *Id.* § 1(b); *see also* Executive Order 13526 (defining classified information).

The CIPA applies equally to classified testimony and classified documents. *See United States v. Lee*, 90 F. Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing *United States v. North*, 708 F. Supp. 399, 399-400 (D.D.C. 1988)); *Kasi v. Angelone*, 200 F. Supp. 2d 585, 596-97 (E.D. Va. 2002) (applying CIPA to classified testimony).

B.     Section 2—Pretrial Conference

Section 2 of the CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3 at § 2. After a

Section 2 motion is filed, the Court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [the CIPA], and the initiation of the procedure established by Section 6 of [the CIPA]." *Id.*

During the pretrial conference, district courts generally establish the trial schedule for the case, including the timing of (1) discovery requests by the defense, (2) the defense's pretrial notice to the United States under the CIPA's Section 5 whereby the defendant identifies an intent to disclose classified information, if any, and explaining the need for such a disclosure, and (3) hearings concerning the use, relevance, and admissibility of classified information pursuant to the CIPA's Section 6. *Id.* In addition, the court may consider any matters relating to classified information, or any matters that promote a fair and expeditious trial. *Id.* No substantive issues concerning the use, relevance, or admissibility of classified information are to be decided during the CIPA Section 2 pretrial conference. *See* S. Rep. No. 96-823, at 5-6, *reprinted in* 1980 U.S.C.C.A.N. 4294, 4298-99 (96th Cong. 2d Sess.).

To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant, or his attorney, at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney. 18 U.S.C. App. III § 2. The government invokes Section 2 and requests a pretrial conference to establish a CIPA schedule and trial schedule for this case.

C.     Section 3—Protective Order

The CIPA Section 3 mandates that federal district courts issue a protective order upon motion by the United States to protect against the improper disclosure of any classified information produced by the government to the defense. *Id.* § 3. Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders,"

*Pappas*, 94 F.3d at 801, as well as to supplement the Court's authority under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders in connection with the discovery process. In contrast to Rule 16(d)(1)'s discretionary authority, however, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, *e.g.* Brady and Jencks material." *Id*. The government may seek a protective order under Section 3 because the government may produce some classified information to the defense counsel currently of record in this case.

D.    Section 4—Protection of Classified Information During Discovery

Section 4 of the CIPA authorizes federal district courts to deny, or otherwise restrict, discovery of classified documents and information in the possession, custody, or control of the United States.  18 U.S.C. App. III § 4; *see*, *e.g.*, *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998); *Yunis*, 867 F. 2d at 619-625.[2]   Similarly, the Federal Rules of Criminal Procedure provide, in pertinent part, that district courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."   Fed. R. Crim. P. 16(d)(1).   The legislative history of the CIPA makes clear that Section 4 was intended to clarify the district court's power under Rule 16(d)(1) to deny, or restrict, discovery to protect national security.  *See* S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300; *see also United States v. Aref*, 533 F.3d 72, 78-

---

[2] The Second Circuit held the *Rovario/Yunis* "relevant and helpful" standard applies to the discovery of classified information.

> We therefore adopt the *Roviaro* standard for determining when the Government's privilege must give way in a CIPA case. Other circuits agree. *See* Klimavicius-Viloria, 144 F.3d at 1261; *United States v. Varca,* 896 F.2d 900, 905 (5th Cir.1990); *United States v. Yunis,* 867 F.2d 617, 623 (D.C.Cir.1989); *United States v. Smith,* 780 F.2d 1102, 1107-10 (4th Cir.1985) (*en banc*); *United States v. Pringle,* 751 F.2d 419, 427-28 (1st Cir. 1984).

*Aref*, 533 F.3d at 80.

79 (2nd Cir. 2008); *United States v. Smith*, 780 F.2d 1102, 1110 (4th Cir. 1985) (holding the defendant's right to discovery must be balanced against public's interest in nondisclosure); *United States v. Pringle*, 751 F. 2d 419, 427 (1st Cir. 1985).

Section 4 provides that a district court:

> upon a sufficient showing may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The Court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. App. III § 4. Like Federal Rule of Criminal Procedure 16(d)(1), Section 4 provides the government may demonstrate the use of alternatives to be warranted through an *in camera*, *ex parte* submission to the court. *Id*.; *see United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2nd Cir. 2010); *Aref*, 533 F.3d at 81; *Yunis*, 867 F.2d 617, 622-23 (D.C. Cir. 1989); *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988); *Pringle*, 751 F.2d 419, 427 (1st Cir. 1984).

In essence, Section 4 allows the United States to request *ex parte* and *in camera* review of its decisions regarding the discoverability of classified information and, if determined to be discoverable, whether government-proposed summaries, or substitutions, would place the defendant in substantially the same position as the underlying classified information. *See*, *e.g.*, *Amawi*, 695 F.3d at 472 (stating "every court that has considered this issue has held that CIPA permits *ex parte* hearings."). If so, district courts issue orders approving of the government-proposed summaries and substitutions, which the government then would produce to the defense.[3]

---

[3] The government's discovery review of classified information is consistent with Rule 16, *Brady v. Maryland*, (373 U.S. 83 (1963)), *Giglio v. United States* (405 U.S. 150 (1972)), the Jencks Act, and other

For example, the government may request that the Court approve of the government's decision to deny discovery of a classified document in its entirety pursuant to Section 4 because the document is not discoverable under the relevant legal standard. *Amawi*, 695 F.3d at 472-73; *Hanna*, 661 F.3d at 295-96. In the alternative, the government may file a motion under Section 4 to delete specific classified information from a document that otherwise contains discoverable information, or to substitute an unclassified summary, in lieu of the underlying classified document. *See Amawi*, 695 F.3d at 472-473 (6th Cir. 2012); *Hanna*, 661 F.3d at 295. The government's Section 4 filings, including all attachments, must remain *ex parte* and *in camera*, under seal, and preserved in the record to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. III § 4.

The government anticipates invoking Section 4 and, accordingly, requests a deadline of February 26, 2021, to file its Section 4 motion. The government is working as expeditiously as possible to review and produce discoverable information in this case and, if possible, the government will endeavor to file its Section 4 motion before February 26, 2021. In the event that the government is not in a position to file its Section 4 motion on or before February 26, 2021, whether because of the COVID-19 pandemic, or for other good cause, the government requests permission to file an *ex parte*, *in camera*, and under seal status update on February 26, 2021.

    E.    <u>Sections 5 and 6—Procedure for Cases Involving Classified Information Possessed by the Defendant</u>

Sections 5 and 6 of the CIPA apply when a criminal defendant who already possesses classified information seeks to disclose such information during the course of a trial, or pretrial

---

discovery requirements. The government will produce in original form, or through an appropriate summary or substitution, any information that is relevant and actually helpful to the material preparation of the defense. *See*, *e.g.*, *Amawi,* 695 F.3d at 472-473 (6th Cir. 2012)*; Hanna,* 661 F.3d at 295.

proceeding.  *See*, *e.g.*, *Baptista-Rodriguez*, 17 F.3d at 1363; *Sarkissian*, 841 F.2d at 965-66; *Collins*, 720 F.2d at 1199-1200.  Section 5 requires the defendant to provide timely written notice to the court and the government describing any classified information that the defendant reasonably expects to disclose during any pretrial, or trial, proceeding.  *See* 18 U.S.C. App. III § 5(a).  The defendant must provide notice "within the time specified by the court, or where no time is specified, within thirty days prior to trial."  *Id.*  Although the description of the classified information may be brief, it must be particularized and set forth the specific classified information that the defendant reasonably believes to be necessary for the defense.  *See Collins*, 720 F.2d at 1199.  The defendant must provide formal notice under Section 5 even if the government knows the defendant may assert a defense involving classified information.  *See United States v. Badia*, 827 F.2d 1458, 1465-66 (11th Cir. 1987).

Section 5 specifically prohibits the defendant from disclosing any classified information until after (1) providing notice, (2) allowing the government to seek a determination of the use, relevance, and admissibility of such information under Section 6, and (3) the time for any interlocutory appeal permitted under Section 7 expires.  18 U.S.C. App. III § 5(a).  If the defendant fails to provide the requisite pretrial notice, the court may prohibit the disclosure of the classified information by the defense, and it may prohibit the defendant from examining any witness with respect to such information.  *Id.* § 5(b).

After the defendant files notice under Section 5 of the CIPA, the government may request that the court conduct a hearing to make "all determinations concerning the use, relevance or admissibility" of the defense-noticed classified information.  18 U.S.C. App. III § 6(a).  Upon such a request, the court *shall* conduct such a hearing, and it must conduct the hearing *in camera* if the Attorney General certifies to the court that a public proceeding may result in the disclosure of

classified information.  *Id*.  Prior to the hearing, the government must first provide the defendant with notice of the classified information that will be at issue.  *Id*. § 6(b)(1).  If the particular information previously was not available to the defendant, the government may, with the court's approval, provide a generic description of the material to the defendant.  *Id*.  The court also may order the government to provide the defendant with "details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing."  *Id*. § 6(b)(2).

If the government requests a hearing before the proceeding at which the defendant expects to disclose the classified information, the court must issue a ruling before the proceeding commences.  *Id*. § 6(a).  The district court's ruling must be in writing and should set forth the basis for its determination as to each item of classified information.  *Id*.

After an *in camera* hearing, if the district court determines that the classified information at issue may not be disclosed during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal.  *Id*. § 6(d).  If the court finds the classified information useful, relevant, or otherwise admissible, the government may ask for the court to approve of (1) the government-proposed substitution of a statement admitting relevant facts that the specific classified information would tend to prove, or (2) the government-proposed substitution of a summary of the classified information.  *Id*. § 6(c)(1).

If the court denies the government's motion for substitution under Section 6(c), the CIPA permits the government, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue.  *Id*. § 6(e)(1).  Upon the government's filing of the Attorney General's affidavit, the court "shall order that the defendant not disclose or cause the disclosure of such information," and it may impose a sanction against the government to compensate for the

defendant's inability to present proof of the specific item of classified information. *See* S. Rep. 96-823 at 9, 1980 U.S.C.C.A.N. at 4302-3. Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the indictment. 18 U.S.C. App. III § 6(e)(2). An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7, or thereafter withdraw its objection to the disclosure of the information. *Id.*

Whenever the court rules at a Section 6(a) hearing that classified information is admissible, the court must require the government to provide the defendant with information it expects to use to rebut the classified information, "unless the interests of fairness do not so require." *Id.* § 6(f). The court may place the United States under a continuing duty to disclose rebuttal information. *Id.* If the government fails to comply, the court may exclude the rebuttal evidence and prohibit the government from examining any witness with respect to such information. *Id.*

F.    Section 7—Interlocutory Appeal

Section 7 permits the United States to take an expedited interlocutory appeal to the appellate court if the district court (a) authorizes the disclosure of classified information, (b) imposes sanctions for nondisclosure of classified information, or (c) refuses to issue a protective order sought by the United States to prevent the disclosure of classified information. *Id.* § 7. If an appeal is taken, the court must not commence the trial until the appeal is resolved. *Id.* Such an appeal and decision does not affect the defendant's right to lodge a subsequent appeal upon conviction (if any) of an adverse ruling by the trial court. *Id.* § 7(b).

G.      Section 8—Procedures Governing the Introduction of Classified Information at Trial or at Pretrial Proceeding

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. *Id*. § 8. Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status. This provision allows the classifying agency, upon completion of the trial, to decide whether information has been so compromised that it could no longer be regarded as classified. *See* S. Rep. No. 96-823 at 10, 1980 U.S.C.C.A.N. at 4304.

Section 8(b) permits the court to order admission into evidence of only a part of a document when fairness does not require the whole document to be considered by the factfinder. The purpose of this provision is to clarify Federal Rule of Evidence 106, known as the rule of completeness, in order to prevent unnecessary disclosure of classified information. *Id.* at 10-11, 1980 U.S.C.C.A.N. at 4304.

Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question, or embarks on a line of inquiry, that would require the witness to disclose classified information. *Id*. at 11, 1980 U.S.C.C.A.N. at 4304. Specifically, under Section 8(c), the government may object to any question, or line of inquiry, that may require the witness to disclose classified information not previously held to be admissible. 18 U.S.C. App. III § 8(c). Following an objection, the court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information." *Id*. In effect, this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those

12

sections, such as where the defense does not realize that the answer to a given question will reveal classified information.  S. Rep. No. 96-823 at 11, 1980 U.S.C.C.A.N. at 4304-5.

### H.    Section 9—Security Procedures

Section 9 requires the Chief Justice of the United States, in consultation with other executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure.  18 U.S.C. App. III § 9(a).  Security Procedures established pursuant to this provision are codified directly following Section 9 of the CIPA.

### I.    Section 9A—Coordination Requirement

Section 9A requires an official of the Department of Justice and the appropriate United States Attorney to provide timely briefings of the fact and status of a prosecution involving classified information to a senior official of the agency in which the classified information originated.  *Id.* § 9A(a).

### J.    Section 10—Identification of Information Related to the National Defense

This section applies in criminal prosecutions in which the government must prove as an element of the crime charged that certain material relates to the national defense, or otherwise constitutes classified information.  *See* S. Rep. 96-823 at 11-12, 1980 U.S.C.C.A.N. at 4305.  In such a circumstance, Section 10 requires the government to inform the defendant of which portions of the material it reasonably expects to rely upon to prove the classified-information element of the crime.  18 U.S.C. App. III § 10.  Section 10 likely will not be applicable in this case.

### K.    Sections 11-15 - Miscellaneous Provisions

The remaining sections of the CIPA contain various miscellaneous provisions.  Section 11 provides for amendments to Sections 1 through 10 of the CIPA.  Section 12 requires the Attorney

13

General to issue guidelines regarding the exercise of prosecutorial discretion over cases in which classified information may be revealed and requires preparation of written findings when prosecution of such cases is declined. Section 13 requires the Attorney General periodically to report such declination decisions to Congress and, when necessary, to report on the operation and effectiveness of the CIPA. Section 14 identifies the senior officials to whom the functions and duties of the Attorney General under the CIPA may be delegated. Section 15 provides the effective date of the CIPA.

## APPLICATION TO THIS CASE

Ahmad Khalil Elshazly—the defendant in this case—is charged with attempting to provide material support or resources to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B. Due to the nature of the charges, the United States anticipates that issues relating to classified information will arise in connection with this case. Accordingly, the United States respectfully moves pursuant to Section 2 of the CIPA for a pretrial conference to consider the possibility and impact of classified information on this case, specifically including changes to the trial date and the setting of a trial schedule that accounts for the application of the CIPA.

The government has produced significant quantities of discovery to the defense, including many hours of audio recordings involving the defendant and a Confidential Human Source, the defendant's post-arrest interview with the FBI, and data pursuant to search warrant returns. The government will produce discoverable information to the defense on a rolling basis. But, given the impact of the pandemic, and the potential for classified filings in this case, the government requests a pretrial conference to discuss modifying the trial date and setting a trial schedule with deadlines to file classified motions in this case.

14

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY
/s/
DOUGLAS P. MORABITO
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct20962
United States Attorney's Office
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700
Douglas.Morabito@usdoj.gov

JUSTIN SHER (DC 974235)
DANIELLE ROSBOROUGH (DC 1016234)
Trial Attorney
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20004
Office: (202) 353-3909
justin.sher@usdoj.gov
Danielle.rosborough@usdoj.gov

15

## CERTIFICATION

I hereby certify that on July 8, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

 /s/
DOUGLAS P. MORABITO
ASSISTANT UNITED STATES ATTORNEY