UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA            :

v.                                  :       CRIM. NO.  3:20-CR-71 (VAB)

AHMAD ELSHAZLY                      :       June 9, 2022

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

ALL VALID INDICTMENTS MUST ALLEGE THE FACTS NECESSARY TO CONVICT ... 2

THIS INDICTMENT DOES NOT ALLEGE THE ESSENTIAL FACTS NECESSARY FOR CONVICTION .................................................................................................................. 4

THE INDICTMENT IN THIS CASE IS INVALID .................................................................... 9

A simple syllogism supports the motion to dismiss here: (1) All valid indictments must allege the essential facts necessary for a conviction. (2) This indictment does not allege the essential facts necessary for conviction.  (3) Therefore, the indictment in this case is not valid. The following reply memorandum addresses each of these in turn, while responding to the government's legal and factual claims in its memorandum.

## ALL VALID INDICTMENTS MUST ALLEGE THE FACTS NECESSARY TO CONVICT

Our opening memorandum sets out at length the fundamental constitutional[1] principles underlying "[t]he rule of law . . . that if every fact laid in the indictment may be true, and yet the accused may be innocent of any offence, the indictment is defective." *United States v. Amedy*, 24 U.S. 392, 403, 6 L. Ed. 502 (1826). *United States v. Geare* captures the rule succinctly: "An indictment should contain every essential fact necessary to clearly define the crime, and the offense sought to be charged should be set out with sufficient accuracy and completeness to support a judgment, either upon demurrer or conviction." *United States v. Geare*, 293 F. 997, 1000 (D.C. Cir. 1923). The *Geare* decision further describes the reason for this rule as set out in the Supreme Court's 1875 *United States v. Cruikshank* decision (described in our opening brief):

---

[1] The requirement arises from the Fifth Amendment to the United States Constitution, which provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . ."

The reason for the requirement that all the material facts and circumstances, essential to a clear definition of the offense, must appear in the indictment, "is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, **second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction**, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances." *United States v. Cruikshank*, 92 U.S. 542, 558 (23 L.Ed. 588).

*Id*. (emphasis added). *See also United States v. Carll,* 105 U.S. 611, 611–13 (1881) (identifying "the necessity of alleging in the indictment all the facts necessary to bring the case within that intent" of the legislature setting out the scope of a crime).

Lest it be thought that the constitutional requirements of a valid indictment have somehow diminished since 1875, the Supreme Court in a footnote of its seminal 2000 decision in *Apprendi v. New Jersey* referenced another 1875 case in describing the requirements of a valid indictment: "The rule was succinctly stated by Justice Clifford in his separate opinion in *United States v. Reese*, 92 U.S. 214, 232-233, 23 L.Ed. 563 (1875): **"'[T]he indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted**.'"" *Apprendi v. New Jersey*, 530 U.S. 466, 490 n. 15 (2000) (emphasis added). *See also Alleyne v. United States*, 570 U.S. 99, 111 (2013).

**THIS INDICTMENT DOES NOT ALLEGE THE ESSENTIAL FACTS NECESSARY FOR CONVICTION**

To convict a defendant of providing personnel to a terrorist organization in violation of 18 U.S.C. § 2339B, the government must prove coordination (or attempted coordination) with that foreign terrorist organization. The government agrees—or rather, it used to agree.

In 2009, the government found itself defending the constitutionality of § 2339B before the Supreme Court in *Holder v. Humanitarian Law Project*. The government at that assured the Supreme Court that the statute did not violate the First Amendment, in part because the limitation on prosecution provision in § 2339B(h) meant that a conviction under the statute would require the government to prove coordination with a terrorist organization to secure a conviction:

> [c]onviction under that provision [18 U.S.C. 2339B(h)] requires a defendant to knowingly provide one or more persons to work under or to supervise a terrorist organization. If an individual acts independently of the organization, he cannot be held liable.

*Holder v. Humanitarian Law Project*, Brief for the Respondents, 2009 WL 4951303 (U.S.), 35 (attached as Exhibit 2).

In its reply brief in *Humanitarian Law Project*, the government even more explicitly articulated that "In any event, the question **whether a defendant has acted 'under [a] terrorist organization's direction or control' is simply a factual issue to be resolved by the jury** in a particular case. 18 U.S.C. 2339B(h)." *Holder v. Humanitarian Law Project*, Reply Brief for the Respondents, 2010 WL 565212 (U.S.), 18 (emphasis added) (attached as Exhibit 3). The government's reply brief then went on to characterize § 2339B(h) as setting out a "statutory

requirement," *id.* at 19, and to reiterate that "the personnel provision here require[s], in order to establish the prohibited underlying conduct, a factual determination about whether an individual operates subject to 'the direction or control' of a foreign entity." *Id.* at 20 – 21.

In (correctly) characterizing the question of "direction or control" as a factual one the jury would need to answer to reach a verdict, the government in 2009 effectively recognized that § 2339B(h) functions as an element of the offense. As the Supreme Court has stated, "elements" of an offense are simply the things the jury must find beyond a reasonable doubt: "The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense." *Alleyne*, 570 U.S. at 107.

As this passage from *Alleyne* shows, moreover, the term "element" is a functional description, one that might well be replaced with the word "ingredient." Or as the Supreme Court has also suggested, the set of elements could also be referred to as the "definition" of the crime. As the Court wrote in *Descamps v. United States*, 570 U.S. 254 (2013), under the "categorical approach" to evaluating predicate offenses for certain sentencing enhancements, "[s]entencing courts may look only to **the statutory definitions—i.e., the elements**—of a defendant's prior offenses . . . ." *Id.* at 261 (internal quotation marks omitted, emphasis added).

The operative indictment in this case does not allege that Mr. Elshazly coordinated or attempted to coordinate with ISIS. A crucial "ingredient" of a § 2339B offense is therefore missing. Put otherwise, the indictment offers an incomplete "statutory definition" of the offense. Or maybe most simply, the indictment does not allege all the elements of the offense.

The government's argument in opposition to our motion to dismiss makes a whiplash-

5

inducing about-face from what it assured the Supreme Court in 2009. In its new stance, the government claims that "the defendant attempts to expand the government's burden of proof by asserting that "direction and control" are elements of the offense—an argument that hinges on an unsupported interpretation of 18 U.S.C. § 2339B(h)." (Gvt memo at 9. Emphasis added.) The government, that is to say, now claims that at trial it will not need to prove to the jury that Mr. Elshazly attempted to coordinate with ISIS.

For the reasons set out in our opening submission, the government's claim cannot be reconciled with the text of § 2339B. The government's briefing before this Court, moreover, offers nothing to show why the government was wrong when it told the Supreme Court in 2009 that per § 2339B(h), "[c]onviction . . . requires a defendant to knowingly provide one or more persons to work under or to supervise a terrorist organization[.]" 2009 WL 4951303 (U.S.), 35.

Of note, even as the government says that it need not prove coordination, its own analysis shows why it does. The government inadvertently gives away the game when it (aptly) characterizes § 233B(h) as serving "to regulate or limit the scope and reach of the statute." Govt memo at 10. The government then suggests that this characterization means that § 233B(h) must be something different than an "element," a term which the government seems to seek to define as "prohibited activities under the statute." *Id.*[2]

But statutory provisions that "regulate or limit the scope and reach" of a criminal provision are routinely and uncontroversially recognized to qualify as "elements." To take one

---

[2] Tellingly, the government offers no explicit definition of "element" and cites no authority for its working definition here.

example, 18 U.S.C. § 2243(a) describes the offense of sexual abuse of a minor:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who—
>
> > (1) has attained the age of 12 years but has not attained the age of 16 years; and
> >
> > (2) is at least four years younger than the person so engaging;
>
> or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

Here the statute's specification as to the location of the sexual act, the age of the victim, and the age of the defendant all regulate or limit the scope of the statute—yet all describe factual conditions that the jury must find to be satisfied before returning a conviction. These are all plainly elements of the offense—but under the government's definition, they would not be.[3]

These requirement of § 2243(a) are not "elements," moreover, simply by virtue of how the statutory text is structured. Congress could full well have written the text of § 2243(a)(2) ("is at least four years younger than the person so engaging") as an exception to § 2243(a)(1) stating that "no person shall be prosecuted under this provision unless that person is at least four years older than said minor." This formulation would have the same practical function as does the actual statutory language: both create a "Romeo and Juliet" carve-out to prevent the statute from reaching sex between a 17-year-old and a 15-year-old, conduct that the statute would otherwise

---

[3] To give another example: 18 U.S.C. § 922(g) describes the offense of possessing a firearm as a convicted felon. Among the elements of that offense is a requirement that the firearm have at some point in its history crossed a state or national line. This feature of the firearm's history has nothing to do with the defendant's act; it is rather a jurisdictional element needed to satisfy constitutional requirements. It is no less an element for this reason.

7

cover.

Other provisions that "regulate or limit the scope and reach of the statute," as the government puts it, likewise must be pled in a valid indictment. These include, as set out in our opening brief, provisions that limit the temporal or territorial reach of criminal laws. The language of § 2339B(h), we have pointed out, distinctly resembles the structure of a typical statute of limitation.

The government in its briefing offers no reasoning suggesting that § 2339B(h) is unlike a statute of limitation. Instead, the government (without meaningful analysis) merely relies upon the handful of district court decisions consistent with its position. Our opening brief thoroughly outlines the fatal faults in the reasoning of those decisions. The government has nothing new to say in their defense.

Finally, the government repeatedly emphasizes that it has charged Mr. Elshazly only with attempting to provide material support to ISIS, which the government states relieves them from the burden of alleging that Mr. Elshazly coordinated with ISIS. This argument falls flat: charging an attempt does not relieve the government of the burden of alleging that a defendant *intended* to satisfy all elements of the offense. And the indictment in this case contains no allegation that Mr. Elshazly acted with the specific intent to coordinate with ISIS, a requirement explicitly spelled out in § 2339B(h).

The indictment in this case, in completely omitting any factual allegation satisfying § 2339B(h), falls fatally short even of the basic requirement that the indictment "track the language of the statute charged[.]" *United States v. Bout*, 731 F.3d 233, 240 (2d Cir. 2013) (citation omitted). Tracking the language of "some" of the statute is simply not enough.

**THE INDICTMENT IN THIS CASE IS INVALID**

As discussed above, all valid indictments must allege the essential facts necessary to a conviction. The indictment in this case does not do that. As a matter of logic, the indictment in this case is therefore invalid. The defect in the indictment, however, is not merely a matter of form or simply a technical flaw. Mr. Elshazly has a fundamental constitutional right to be tried only on charges that have been vetted by a grand jury. The indictment here offers this Court zero assurance that any grand jury has found that there is probable cause to believe that Mr. Elshazly attempted to engage in coordinated action with ISIS. Such an indictment cannot stand. *See United States v. Crowley,* 79 F. Supp. 2d 138, 161 (E.D.N.Y. 1999), *aff'd in part, rev'd in part on other grounds*, 236 F.3d 104 (2d Cir. 2000) (holding indictment was insufficient where "[t]his Court cannot say with any degree of certainty that the defendants' convictions were obtained by the use of evidence that first was presented to the grand jury").

The problem is particularly acute here, where the government in its briefing espouses the (incorrect) view that it has no burden of proving attempted coordination even at trial. Under these circumstances the Court has grave reason to doubt that the government accurately described the requirements of § 2339B to the grand jury. To the contrary, the government's arguments here strongly suggest that they never informed the grand jury of the coordination requirement under § 2339B(h). Certainly the grand jury never returned an indictment affirming that they found probable cause that Mr. Elshazly even attempted to coordinate with ISIS.

The problem with the indictment is a fundamental one that goes to the heart of the constitutional right to be tried only upon charges a grand jury has found to be supported by probable cause. It is also a problem the government can solve, simply by returning to the grand

9

jury and presenting the grand jury with a properly formulated indictment. If the government can

persuade the grand jury that probable cause supports the charges, then it will return a corrected

indictment. But if the government cannot obtain an indictment after properly informing the grand

jury of the actual offense Congress has crafted, then Mr. Elshazly cannot be justly brought to

trial on these charges.[4]

---

[4] As set out in our principal submission, there is good reason to question whether the government can obtain a valid indictment. The complaint affidavit, for example, nowhere alleges that Mr. Elshazly, in the course of the alleged offense conduct, contacted or attempted to contact an actual member of ISIS. The complaint likewise does not allege that government informants led Mr. Elshazly to believe he was coordinating with actual members of ISIS. In its submission now, the government claims that "Elshazly paid CHS 4, whom he believed to be an ISIS facilitator, $500 to be smuggled out of the United States and transported to Turkey by boat." Gvt memo at 4. The government cites to ¶ 53 of the complaint affidavit as supporting this claim, as well as the claim that "Elshazly believed that the boat would bring him to Turkey, where he would meet with CHS 3 and other ISIS members who, in turn, would help him travel to join ISIS in Syria."

   But Paragraph 53 of the complaint affidavit, reproduced here in full, says nothing about "ISIS facilitators" or "ISIS members" as the government now claims:

   53. On December 14, 2019, Elshazly met with CHS 4. Elshazly counted out five onehundred dollar bills and handed the money to CHS 4. CHS 4 explained that the money would be used to pay for transport on a fishing boat that would take Elshazly to a container ship that was destined for Turkey. Elshazly asked if the boat (i.e., the container ship) was going to Turkey and was assured that it was. Elshazly was informed that he would be provided with an employee badge on the container ship and would work while onboard. Elshazly asked whether he needed to tell anyone on the boat that he was going to Turkey. Elshazly was informed that CHS 3 would be waiting for him in Turkey upon the boat's arrival. Elshazly asked CHS 4 what he should do with his car. Elshazly formulated the plan to leave the vehicle in the lot where CHS 4 and Elshazly were set to meet the following day with the keys taped underneath it, which would allow a family member to retrieve it.

ECF No. 1-1 at ¶ 53.

Respectfully submitted,

THE DEFENDANT,
Ahmad Elshazly

OFFICE OF THE FEDERAL DEFENDER

Date: June 09, 2022          /s/ James P. Maguire
                              James P. Maguire
                              Assistant Federal Defender
                              265 Church Street, Suite 702
                              New Haven, CT 06510
                              Phone: (203) 498-4200
                              Bar No.: ct29355
                              Email: james_maguire@fd.org

                              Sabrina Shroff,
                              80 Broad St. 19th Floor
                              New York, New York 10004
                              Email: Sabrinashroff@gmail.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 09, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                              /s/ James P. Maguire
                              James P. Maguire

11